IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YODLEE, INC., | Case No. C-06-07222 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 80] |
| ABLAISE LTD. and GENERAL INVENTIONS INSTITUTE A, INC., | |
| Defendants. | |
| FINANCIAL FUSION, INC. | **RELATED CASE**<br>Case No. C-06-02451 SBA |
| Plaintiff, | [Docket No. 132] |
| v. | |
| ABLAISE LTD., and GENERAL INVENTORS INSTITUTE A, INC. | |
| Defendants. | |
| ABLAISE LTD. and GENERAL INVENTIONS INSTITUTE A, INC., | **RELATED CASE**<br>Case No. C-07-01995 SBA |
| Plaintiffs, | [Docket No. 71] |
| v. | |
| BANK OF AMERICA CORPORATION, | |
| Defendant. | |

1    Currently before the Court is the "Motion to Stay Proceedings Pending Reexamination and
2 Resolution of Concurrent District Court Action," filed by Plaintiff Financial Fusion, Inc.[06-2451,
3 Docket No. 132]. Plaintiff Yodlee, Inc. joins in the motion to stay [06-7222, Docket No. 80] as does
4 Defendant Bank of America [07-1995, Docket No. 71].

5    Having read and considered the arguments presented by the parties in the papers submitted to
6 the Court, the Court finds this matter appropriate for resolution without a hearing.

## BACKGROUND

8    These above-captioned cases are three related patent actions. The litigation began in April
9 2006 when Financial Fusion sued Ablaise for a declaratory judgment of non-infringement, invalidity
10 and unenforceability of U.S. Patent No. 6,961,737 ("737 patent"). Yodlee sued Ablaise over the
11 same patent in November 2006. Ablaise later sued Bank of America ("BofA") for patent
12 infringement. In the course of this litigation, Financial Fusion, Yodlee and BofA are referred to as
13 the "Accused Parties."

14   The *Markman* process has not yet begun in these related cases. The *Markman* hearing was
15 scheduled for May 28, 2008, with the opening brief due on April 10, 2008, but the parties stipulated
16 to an extension of "at least three weeks" for the hearing, as well as an extension of the briefing
17 schedule, because they were "actively engaged in settlement discussions." [Opp'n, Ex. E, Joint
18 Stipulation to Amend Dates in the Case Management Order Relating to Claim Construction].
19 Clearly, the cases did not settle during this period. Discovery related to the *Markman* issues closed
20 on March 26, 2008. [Opp'n, Ex. G, Ablaise's Motion for Administrative Relief Seeking a Case
21 Management Conference].

22   The Court's Order of September 30, 2008, clarified the scope of the litigation to the extent
23 that it is now clear that only the '737 patent is at issue, thus the *Markman* hearing should only refer
24 to that patent, and not its parent, the '530 patent, as previously proposed by Ablaise. The Order also
25 limited the litigation to only those customers of Financial Fusion who had actually received notices
26 of infringement from Ablaise. Finally, the Order confirmed that discovery is still stayed pending the

*Markman* hearing.

It was anticipated that the Court would set the briefing schedule and hearing date for the *Markman* at the December 18, 2008, case management conference, but the CMC did not take place because of the Court's trial schedule. In the interim, the Accused Parties filed the instant motion to stay the litigation.

Two significant procedural developments form the basis of the motion to stay. The first is the newly pending PTO re-examination proceeding, which was requested by the Financial Fusion attorneys on behalf of a third-party. The application was filed October 9, 2008, and granted on December 22, 2008. The PTO granted re-examination of the '737 patent on the basis that a "substantial new question of patentability affecting claims 1-6 of the '737 patent is raised by the request." [Reply Br., Lim Decl., Ex. 1].

The second development is concurrent litigation in the district court of the District of Columbia on the identical claims of the '737 patent. The cases are *Dow Jones & Co. v. Ablaise Ltd.*, 06-01014, and *Dow Jones Reuters Business Interactive, LLC v. Ablaise Ltd.*, 06-01015 (collectively, "the *Dow Jones* cases"). [Motion to Stay, Ex. B, docket for cases 06-1014 and 06-1015]. The *Dow Jones* cases involve claims for declaratory judgment and infringement of the same patent at issue in the present cases, the '737 patent, in addition to its parent, the '5e0 patent.

The *Dow Jones* cases were filed on June 1, 2006, two months after the first of these related cases. A *Markman* hearing was held on June 6, 2007, and the decision on claim construction issued on July 11, 2007. [Reply Br., Ex. 1-A]. Discovery took place for one year, no discovery motions are pending and all discovery disputes have been resolved. [Reply Br., Ex. 1, ¶¶ 6-9]. Ablaise's motion to dismiss the '530 patent was filed July 21, 2008, and heard and denied without prejudice 8 weeks later.

*Dow Jones* plaintiffs filed a motion for summary judgment on the invalidity of claims 1, 3, 4 and 6 of the '737 patent (the exact claims asserted in this litigation), and it was scheduled to be fully briefed as of November 26, 2008. Although no hearing date on the motion is yet set, the moving

3

1 parties expect resolution within 8 weeks, if the timing of the earlier motion to dismiss serves as a
2 good example.
3     The Accused Parties propose to stay the related cases until further decision by either the
4 District of Columbia district court in the *Dow Jones* cases and/or the Patent and Trademark Office
5 "("PTO"), which just granted the re-examination request.

## LEGAL STANDARD

7     Re-examination is a procedure by which any person can request that the PTO re-examine or
8 re-evaluate the patentability of an unexpired United States patent. *See* 35 U.S.C. § 302; *see also*
9 *eSoft, Inc. v. Blue Coat Systems, Inc*., 505 F.Supp.2d 784, 786 (D.Colo. 2007). "Congress instituted
10 the reexamination process to shift the burden or reexamination of patent validity from the courts to
11 the PTO." *Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78 (D.D.C. 2002). Patent
12 validity is a commonly asserted defense, and courts are cognizant of Congress's intent to utilize the
13 PTO's specialized expertise to reduce costly and time-consuming litigation. *Id.*
14     Courts are not required to stay judicial proceedings pending re-examination of a patent. It is,
15 however, within a district court's discretion to do so. *See, e.g., Ethicon, Inc. v. Quigg*, 849 F.2d
16 1422, 1426-27 (Fed. Cir. 1988) (citations omitted) ("Courts have inherent power to manage their
17 dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO
18 examination"); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985); *Telemac Corp. v.*
19 *Teledigital, Inc*., 450 F. Supp. 2d 1107, 1110 (N.D. Cal. 2006) (Wilken, J.). There is "a liberal
20 policy in favor of granting motions to stay proceedings pending the outcome" of re-examination,
21 especially in cases that are still in the initial stages of litigation and where there has been little or no
22 discovery. *ASCII Corp. v. STD Entm't USA, Inc*., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994); *see*
23 *also Robert H. Harris Co. v. Metal Mfg. Co.*, 19 U.S.P.Q. 2d 1786, 1788 (E.D. Ark. 1991) ("[t]he
24 legislative history surrounding the establishment of the reexamination proceeding evinces
25 congressional approval of district courts liberally granting stays").
26     However, a court is under no obligation to delay its own proceedings by yielding to ongoing

4

PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. *See NTP, Inc. v. Research In Motion, Ltd.*, 397 F.Supp.2d 785, 787 (E.D. Va. 2005) (citing *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001)). There is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule "would invite parties to unilaterally derail" litigation. *Soverain Software LLC v. Amazon.Com*, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

In determining whether to grant a stay pending re-examination, courts consider: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *See Telemac*, 450 F. Supp. 2d at 1110; *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D. Cal. 2006); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005). A trial court's order staying an infringement suit pending the completion of re-examination proceedings is not appealable. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983), *cert. denied*, 464 U.S. 935 (1983).

## DISCUSSION

### I.     Staying the litigation pending re-examination.

A.     <u>Fact discovery has not begun and no trial date has been set</u>.

The first factor examines "whether discovery is complete and whether a trial date has been set." Courts have noted "there is 'a liberal policy in favor of granting motions to stay proceedings pending the outcome' of reexamination, especially in cases that are still in the initial stages of litigation and where there has been little or no discovery." *Telemac* at 1111 (quoting *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994)). In fact, many courts have granted stays well beyond discovery's completion, well into litigation, and very close to trial. *See eSoft* at 788 (discussing cases).

5

Here, the parties have not conducted any fact discovery and the motion to dismiss the declaratory judgment was denied at the outset of the litgation. Discovery was stayed at the joint request of the parties until after a *Markman* hearing. [Docket No. 85, Joint Case Management Statement]. The Court has not set a briefing schedule for claim construction or a trial date. Ablaise contends the Accused Parties of having intentionally delayed the *Markman* process by asking the Court to continue the *Markman* briefing because the parties were actively engaged in settlement. [Opp'n, p. 3]. Ablaise joined the stipulation to stay, but now suggests that the Accused Parties really never intended to settle because, in fact, they "refused to settle." [Opp'n, p. 4, Arenz Decl. ¶¶ 5-6]. Those settlement negotiations are presumably confidential, thus accusations of who refused to settle are not relevant to the Court's analysis.

The relevant inquiry here is the stage of the litigation, and the fact that no *Markman* hearing has occurred simply means that the case is less, rather than more, advanced. Ablaise is critical of the Accused Parties' "myopic focus only on the stage of discovery" and argues that a substantial investment of time and expense in litigation, even if in an early stage, is just as relevant to the inquiry. [Opp'n, p. 6]. Judging by the length of the docket and the fact that the case will be three years old in April 2009, the Court does not doubt that much time and money has been expended by all parties. However, it is well-known that patent litigation is costly to all parties. The cost of litigation is not a stand-alone factor in determining whether to grant a stay.

The Court is aware that the parties are probably prepared to move on the *Markman* hearing fairly quickly whether a stay is issued or not, because they were only two days away from filing the opening brief when the current temporary stay was requested. Furthermore, Ablaise is ready to produce relevant documents upon commencement of fact discovery in the instant litigation because it has already done so in the *Dow Jones* cases. [Opp'n, p. 5].

So, while true that this docket is a long one for a case in its early stage – 138 docket entries according to Ablaise – none of those entries regard the substance of the '737 patent. A sample of the activity on the docket includes: (1) Ablaise's motion to dismiss the declaratory judgment for lack

of an actual controversy, which was denied early on, before the case was reassigned to this Court; (2) an opposed motion to file a Second Amended Complaint, which was granted; (3) the BofA case was transferred to this court from Delaware; (4) an opposed motion to relate the Yodlee and Financial Fusion cases, also granted (5) multiple reschedulings of Case Management conferences as well as CM deadlines, and (6) a multitude of applications for pro hac vice appearances.

Of a more substantive nature, Financial Fusion submitted its preliminary contentions of invalidity on December 17, 2007. Finally, the Court's Order of September 30, 2008, on Ablaise's motion for a case management order, clarified the scope of this litigation. The Order also confirmed that discovery is still stayed pending the *Markman* hearing.

The Court agrees with Ablaise that extensive motion practice on the docket should be assessed in connection with the motion to stay. However, the Court concurs with the Accused Parties that same motion practice is not automatically equated with progress in the litigation, and in this case, does not negate the fact that there have been no depositions, no documents exchanged, and, according to the Accused Parties, "virtually no discovery other than discovery that the accused parties had to engage in related to the prior art. " Reply Br. at 5. These related cases are still at an early stage of litigation, and this factor weighs in favor of a stay.

B.     <u>The pending reexamination is likely to resolve all the issues in the litigation</u>.

The second factor examines "whether a stay will simplify the issues in question and trial of the case."

> The Federal Circuit has explained that a major "purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceedings)."

*eSoft* at 787 (quoting *Gould*, 705 F.2d at 1342).

To truly simplify the issues, however, the outcome of the reexamination must "finally resolve all issues in the litigation." *Gladish v. Tyco Toys Inc*., 1993 WL 625509 *2 (E.D.Cal.1993). If regardless of the result of the reexamination, there are still claims or counterclaims that need to be resolved by the Court, then reexamination clearly fails to provide a final resolution.

7

*Id.* \*2. *See also IMAX Corp. v. In-Three, Inc.* 385 F.Supp.2d 1030, 1032 -1033 (C.D.2005) (denying motion to stay in part because the court must still address defendant's counterclaims, some of which are completely unrelated to patent infringement); *Enprotech Corp. v. Autotech Corp.*, 1990 WL 37217, (N.D.Ill.1990) (denying motion to stay in part because PTO would not resolve claims of inequitable conduct); *Tokuyama v. Vision Dynamics,* 08-2781-SBA (denying the stay in part because of the remaining antitrust counterclaim).

Here, the Accused Parties' Amended Complaint alleges one count for declaratory judgment of the '737 patent. Ablaise's Amended Complaint against BofA alleges one count of patent infringement, for the '737 and '530 patents. Because the '530 patent is no longer at issue in this litigation as of this Court's Order of September 30, 2008, (Docket No. 129), the only issue that requires adjudication relates to the validity of the '737 patent, which is precisely the issue before the PTO.

Statistically, the odds favor at least some of the asserted claims being cancelled by reexamination. The PTO changes at least *some* claims in approximately 64% of patent reexaminations. It cancels *all* claims in approximately 11% of the cases and only confirms *all* claims in 25% of the cases. U.S. Pat. & Trademark Office, Quarterly Ex Parte Reexamination Filing Data Rep. (June 30, 2008); *see also Telemac* at 1110 (discussing data through 1992). And while the Court is not bound by the PTO's determination, its expertise is persuasive, and would likely save the parties and the Court considerable time, effort, and expenditure in resolving this matter.

The Accused Parties argue that even the amendment of a single claim of the '737 patent changes the litigation landscape, such as to warrant a stay pending the completion of the process, because an amendment "would give rise to intervening rights under 35 U.S.C. § 307(b)." [Motion, p. 7]. In addition, "any substantive change to the asserted claims would mean that the '737 patent could not be enforced for the period before the reexamination certificate issues." [Motion, pp.7-8 (citing *Bloom Eng'g Co. v. North American Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997)].

1   Finally, should the '737 claim not survive reexamination, Ablaise would lose the basis for its
2   infringement contentions. [Motion, p. 8].  This argument is speculative, as is Ablaise's response to
3   it.  Ablaise believes the Accused Parties will argue two prior uses invalidate the '737 patent (a
4   system called Fishwrap and Quote.com), because that is the argument they have made in the *Dow*
5   *Jones* litigation.  And because the PTO does not consider prior use during reexaminations, the "PTO
6   cannot address the necessary issues to simplify these cases for trial." [Opp'n, p. 7].  The Court is not
7   persuaded by this reasoning.  Assuming the PTO invalidates some or all claims in the '737 patent
8   based on prior art – and the reexamination request was granted because there are six different prior
9   art references, none of which were before the examiner during the patent prosecution –  this is
10  important intrinsic record evidence for the Court to have for the *Markman* process, regardless of
11  whether or not the Accused Parties raise additional "prior use" defenses.
12       For these reasons, the second factor, on the balance,  weighs in favor of staying  the
13  litigation.
14       C.    A stay would neither unduly prejudice nor advantage the parties.
15       The third factor examines "whether a stay would unduly prejudice or present a clear tactical
16  disadvantage to the nonmoving party." Though true that the reexamination process is lengthy,
17  "[m]ere delay, without more though, does not demonstrate undue prejudice." *Ho Keung Tse v. Apple*
18  *Inc.*,  2007 WL 2904279, 4 (N.D.Cal.2007) (citing *Nanometrics*, 2007 WL 627920 *3).
19       There is no evidence that counsel for Financial Fusion, by requesting reexamination on
20  behalf of a third party, did so as a dilatory tactic in this litigation.   This is not a case where, for
21  example, a party requested reexamination only after either an unfavorable ruling by the court or a
22  favorable ruling by the PTO. *See, e.g.*, *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.*,
23  2007 WL 1655625, *6 (N.D.Cal.2007) (denying stay where party waited until it had had a trial, had
24  litigated motions for judgment as a matter of law and for a new trial on the merits, and then had a
25  favorable PTO action to request a stay).
26       A reexamination means that the Court and the parties will not need to waste their

efforts, "attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers," and everyone will benefit from the certainty afforded by the reexamination.

One measure of undue prejudice is the loss of an adequate remedy at law. Ablaise seeks money damages from the Accused Parties and if there is a finding of infringement, any delay created by the stay should result in increased damages and prejudgment interest to fully compensate Ablaise.

Further, as Financial Fusion points out, the *Dow Jones* litigation will not go on indefinitely – discovery is complete, and the parties have a fully briefed motion for summary judgment pending at this very moment. Given the relative speed with which those cases have progressed since June 1, 2006[1], it is obvious to this court that the *Dow Jones* litigation will proceed before these cases, and Ablaise will not be unduly prejudiced by focusing its efforts on that litigation before turning back to litigations in this District.

Finally, the Accused Parties have proposed for the stay to terminate either when the reexamination completes, or when the *Dow Jones* court invalidates the patent, whichever occurs earliest. The Court agrees with the movants that this approach minimizes any potential risk that Ablaise will be prejudiced by protracted delay. Thus, the third factor weighs in favor of granting the stay.

All three factors favor granting the stay of this litigation pending the PTO's reexamination of the '737 patent.

**II.    Staying the action pending a ruling in the Dow Jones litigation.**

An additional basis for granting the motion to stay is that if the *Dow Jones* Court finds the '737 patent invalid, either on the pending summary judgment, or at trial this year, Ablaise would be

---

[1] Ablaise disagrees with this description, but the docket speaks for itself. The cases were filed June 1, 2006, two months after the first of these related cases was filed. The *Markman* process was complete a year ago, fact discovery is closed, a fully briefed motion for summary judgment is pending. The *Dow Jones* cases have proceeded more quickly than these related cases, and even though no trial date is set, if the motion for summary judgment is denied, it is likely to be set for the first available date, given the case is 3 years old this year.

collaterally estopped from asserting the claims in all three cases. In *Blonder-Tongue Laboratories, Inc. V. University of Illinois Foundation*, 402 U.S. 313, 331-335 (1971), the Supreme Court held that in a patent infringement suit, a patentee is estopped to assert the validity of a patent that has been declared invalid in a prior suit in federal court against a different defendant, unless the patentee demonstrates that he did not have a full and fair opportunity, procedurally, substantively, and evidentially, to litigate the validity of his patent in the prior suit.

If collateral estoppel were raised, because the *Financial Fusion* and *Yodlee* cases involve exactly the same patent claims asserted in *Dow Jones*, these cases would end altogether. Because the *BofA* case includes two additional asserted claims of the '737 patent, even though the case would not end, it would be significantly limited in scope.

The benefits of staying this litigation are greater than any perceived harms. The litigation could be simplified by the PTO's findings, even if the Court chooses not to adopt those findings. And the litigation may even be mooted by the decision of the *Dow Jones* Court under the principle of collateral estoppel as expressed in *Blonder-Tongue*

**CONCLUSION**

For the reasons given above, the Court GRANTS the Accused Parties' Motion to Stay.

Accordingly, these proceedings are HEREBY STAYED pending the resolution of the reexamination of the '737 patent by the United States Patent and Trademark Office or until a determination by the District Court of Columbia in the *Dow Jones* litigation, whichever occurs first. Plaintiffs and Defendants shall notify the Court in writing, within ten days of any disposition. All matters calendared in this action are VACATED.

IT IS SO ORDERED.

Dated: 1/15/09

SAUNDRA BROWN ARMSTRONG
United States District Judge

11